IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Case No. 1:18-cr-283 |
| ) | |
| MOHAMMAD MALIK, ) | |
| ) | The Hon. Hilton |
| Defendant. ) | |

## STATEMENT OF FACTS

The United States and the defendant, MOHAMMAD MALIK (hereinafter "the Defendant") agree that the allegations in the Criminal Information and the following facts are true and correct, and that had the matter gone to trial the United States would have proven them beyond a reasonable doubt:

1. From in or about May 2015 and continuing to on or about May 9, 2018, in Arlington County, Virginia, within the Eastern District of Virginia and elsewhere, the Defendant did unlawfully, knowingly, and intentionally combine, conspire, confederate, and agree with others, both known and unknown, to unlawfully, knowingly, and intentionally distribute five-hundred (500) grams or more of a mixture and substance containing a detectable amount of cocaine, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 846.

2. During the course and in furtherance of the conspiracy, the Defendant distributed cocaine for profit. For approximately one year, the Defendant regularly drove from his residence in Lorton, Virginia, to New York in order to obtain quantities of cocaine. During this time, the

Defendant also obtained marijuana from other sources of supply. The Defendant distributed both cocaine and the marijuana to customers.

3. During the pendency of the conspiracy, the Defendant asked a co-conspirator ("UC-1") to store the Defendant's cocaine in UC-1's home. UC-1 lived on the same street as the Defendant. The Defendant also asked UC-1 to regularly accompany him to drug deals. During these deals, the Defendant sold both cocaine and marijuana.

4. On May 12, 2016, law enforcement arrested the Defendant and UC-1. On that same day, law enforcement executed a search of the Defendant's home and a vehicle. During the course of that search, law enforcement seized $18,260 in United States currency and approximately 3,626 grams of marijuana. Law enforcement also executed a consensual search of UC-1's home and during the course of this search seized approximately 384 grams of cocaine and 80 grams of methylone (also known as "molly").

5. During the course of the conspiracy, the Defendant sold approximately eighty (80) grams of cocaine and approximately one hundred and ninety three (193) grams of marijuana to a confidential source working with law enforcement (hereinafter "CS"). The Defendant also sold approximately four hundred and forty one (441) grams of cocaine and approximately thirty four (34) grams of marijuana to an undercover officer ("UC"). In total, the Defendant received $23,900 in United States currency from these sales.

6. On or about May 20, 2015, in Woodbridge, Virginia, the Defendant sold the CS approximately 3.5 grams of cocaine and one (1) ounce of marijuana for $450.

7. On or about June 4, 2015, in Woodbridge, Virginia, the Defendant sold the CS approximately seven (7) grams of cocaine and one (1) ounce of marijuana in exchange for $650.

8. On or about June 16, 2015, in Woodbridge, Virginia, the Defendant sold the CS approximately a half of an ounce of cocaine and one (1) ounce of marijuana in exchange for $1,000.

9. On or about July 1, 2015, in Woodbridge, Virginia, the Defendant sold the CS approximately a half of an ounce of cocaine and one (1) ounce of marijuana in exchange for $1,000.

10. On or about July 7, 2015, in Woodbridge, Virginia, the Defendant sold the UC approximately a half of an ounce of cocaine and one (1) ounce of marijuana in exchange for $1,000.

11. On or about July 9, 2015, in Woodbridge, Virginia, the Defendant sold the UC approximately a half of an ounce of cocaine in exchange for $750.

12. On or about July 15, 2015, in Woodbridge, Virginia, the Defendant sold the UC approximately one (1) ounce of cocaine in exchange for $1,400.

13. On or about July 29, 2015, in Woodbridge, Virginia, the Defendant sold the UC approximately two (2) ounces of cocaine in exchange for $2,600.

14. On or about August 12, 2015, in Woodbridge, Virginia, the Defendant sold the UC approximately two (2) ounces of cocaine in exchange for $2,600. During this controlled buy, the Defendant warned the UC not to sell to any police officers, especially if the UC had children.

15. On or about September 3, 2015, in Woodbridge, Virginia, the Defendant sold the UC approximately two (2) ounces of cocaine in exchange for $2,600.

16. On or about September 15, 2015, in Woodbridge, Virginia, the Defendant sold the UC approximately three (3) ounces of cocaine in exchange for $3,900. During this controlled buy, the Defendant asked the UC if he was a "cop" and told the UC that a person would only have to serve a few months for selling "weed," but that a person would have to serve years for selling cocaine. The Defendant also informed the UC that $1,300 per ounce was the best deal he could offer because the cocaine was "Fish Scale," which he claimed came "straight off the brick." The Defendant also informed the UC that he was not the "King Pin" and that he obtained his cocaine from New York.

17. On or about September 30, 2015, in Woodbridge, Virginia, the Defendant sold the UC approximately three (3) ounces of cocaine in exchange for $3,900.

18. On or about December 10, 2015, in Woodbridge, Virginia, the Defendant sold the CS approximately one (1) ounce of marijuana in exchange for $300.

19. On or about January 14, 2016, in Woodbridge, Virginia, the Defendant sold the CS approximately one (1) ounce of cocaine and one (1) ounce of marijuana in exchange for $1,750.

20. Shortly after law enforcement arrested the Defendant, the Defendant entered into a plea agreement with the United States Attorney's Office for the Eastern District of Virginia. After entering into this plea agreement, the Defendant's pending criminal complaint was dismissed without prejudice.

21. In and around the fall of 2017, the Defendant returned to selling cocaine. During this period, the Defendant once again obtained his cocaine from the same source of supply that

he had previously obtained cocaine from during this conspiracy. This source of supply lives and operates in New York.

22. From the fall of 2017 to on or about May 9, 2018, the Defendant obtained approximately 20 ounces of cocaine every two to three weeks from his source of supply in New York. During this period, another co-conspirator ("UC-2") would drive from New York and meet the Defendant at a location in Washington, D.C. UC-2 would then provide the cocaine to the Defendant. On at least one occasion, UC-2 also met the Defendant at a location in the Eastern District of Virginia to deliver the cocaine. The Defendant sold the cocaine that he obtained from UC-2 to drug distributors operating in Arlington County, Virginia, which is located in the Eastern District of Virginia, and elsewhere.

23. On or about May 9, 2018, law enforcement approached the Defendant with evidence of his drug trafficking. The Defendant confessed to his role in distributing cocaine. During a subsequent consensual search of the Defendant's residence located in Fairfax County, Virginia, law enforcement seized approximately 10 ounces of cocaine and $4,000 in drug proceeds. The Defendant obtained this cocaine from UC-2 a few weeks prior to the seizure.

24. During the course of this conspiracy, the Defendant was personally involved in the distribution of, or it was reasonably foreseeable to the Defendant that his co-conspirators distributed in furtherance of the conspiracy, at least 3.5 kilograms but less than 5 kilograms of cocaine (Level 28).

25. The acts taken by the Defendant in furtherance of the offense charged in this case, including the acts described above, were done willfully and knowingly with the specific intent to violate the law.

26. The Defendant acknowledges that the foregoing Statement of Facts does not describe all of his conduct relating to the offense charged in this case nor does it identify all of the persons with whom the Defendant may have engaged in illegal activities.

27. The Statement of Facts shall be admissible as a knowing and voluntary confession in any proceeding against the Defendant regardless of whether the plea agreement is presented to or accepted by a court. Moreover, the Defendant waives any rights that he may have under Fed. R. Crim. P. 11(f), Fed. R. Evid. 410, the United States Constitution, and any federal statute or rule in objecting to the admissibility of the Statement of Facts in any such proceeding.

Respectfully submitted,

G. Zachary Terwilliger
United States Attorney

By: _____  Lena Munasifi for
Carina A. Cuellar
Assistant United States Attorney

Defendant's Signature: After consulting with my attorney and pursuant to the plea agreement entered into this day between the Defendant, Mohammad Malik, and the United States, I hereby stipulate that the above Statement of Facts is true and accurate, and that had the matter proceeded to trial, the United States would have proved the same beyond a reasonable doubt.

Date: 07/24/18

Mohammad Malik
Defendant

Defense Counsel's Signature: I am the attorney for the Defendant, Mohammad Malik, in this case. I have carefully reviewed the above Statement of Facts with him. To my knowledge, his decision to stipulate to these facts is an informed and voluntary one.

Date: 7/24/18

Cary Citronberg, Esq.
Counsel for the Defendant

7